WILLIAM J. PATTERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Patterson v. Commissioner
Docket No. 7208-74.
United States Tax Court
T.C. Memo 1977-300; 1977 Tax Ct. Memo LEXIS 137; 36 T.C.M. (CCH) 1189; T.C.M. (RIA) 770300; September 7, 1977, Filed *137 William J. Patterson, pro se. Lowell F. Raeder, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax for the taxable years 1968 and 1969 in the amounts of $5,964.44 and $1,466.60, respectively. The sole issue for decision is whether the sums of $18,335 and $8,200 received by petitioner from John J. Flynn in 1968 and 1969, respectively, constitute taxable income during those years. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibit are incorporated by reference. Petitioner resided in Drexel Hills, Pa. when he filed his petition. From 1964 through 1968 petitioner was employed as a salesman for Solo Paper Co. His highest salary was $18,000 in one year. In 1968 he worked part of the year, earning only $3,427.18. In 1969 he was unemployed and filed no Federal income tax return. During 1968 and 1969 petitioner was married and had three dependent children. Petitioner was a close personal friend of a Mr. John J. Flynn for over 25 years. Flynn was a corporate executive, earning approximately *138 $58,000 per year. Beginning in 1965 Flynn advanced funds to petitioner. There was no evidence of indebtedness, such as promissory notes, nor was there any collateral for the loans. There was no discussion on charging interest. By 1969 the advances exceeded $50,000. On April 1, 1969 petitioner prepared, executed and delivered to Flynn a bank draft for $56,000 which Flynn presented for payment to Girard Trust Bank. The draft was not paid due to insufficient funds. On June 13, 1969, petitioner prepared, executed and delivered to Flynn a personal check for $70,000 which was dishonored by Girard Trust Bank because petitioner had closed his account. On December 23, 1969, in eexchange for $200 from Flynn, petitioner signed the following statement prepared by Flynn: TO WHOM IT MAY CONCERN I, WILLIAM PATTERSON, OF 4367 WOODLAND AVENUE, DREXEL HILL, PENNA., DO HEREBY SWEAR THAT I HAVE RECEIVED FROM JOHN J. FLYNN, OF 766 MANCELL ROAD, STRAFFORD, PENNA., A CERTAIN SUM OF MONEY BOTH IN CASH AND CHECKS TOTALING $50,000 Fifty Thousand Dollars WJP
TO BE USED TO GAIN CONTROL OF A CERTAIN COMPANY FOR JOHN J. FLYNN BUT, UNFORTUNTELY [sic] I WAS UNABLE TO ACCOMPLISH THIS VENTURE *139 FOR MR. FLYNN AND INSTEAD USED ALL OF THE ABOVE MENTIONED FUNDS FOR MY OWN BENEFIT, AND HAVE NEVER REPAID ANY PART OF THESE FUNDS ENTRUSTED TO ME, NOR DO I HAVE ANY MEANS IN THE FORSEEABLE FUTURE TO REPAY THESE FUNDS TO JOHN J. FLYNN. I DO HEREBY SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT. /s/ WILLIAM J. PATTERSON DECEMBER 23, 1969 At the time petitioner signed the above statement he was unemployed and broke. Although petitioner knew the statement was not true, he signed it because he knew he could not repay the $50,000 and because it was an accommodation to a friend of long standing who lent him money. Petitioner continued to be liable on the indebtedness to Flynn throughout 1968 and 1969. ULTIMATE FINDINGS OF FACT In 1968 petitioner received $18,335 in personal loans from John J. Flynn and in 1969 he received $8,200 in personal loans from John J. Flynn. During those years the indebtedness was not forgiven nor was any indebtedness to John J. Flynn forgiven for loans made prior to 1968. OPINION The sole question to be decided is whether petitioner received nontaxable loans of cash from John J. Flynn in 1968 and 1969 and if so, whether such indebtedness and *140 alleged loans received by petitioner prior to 1968 were forgiven. The issue is a question of fact. Petitioner's testimony is diametrically opposed to that of respondent's witness, John J. Flynn. The record is far from satisfactory. Petitioner was not represented by counsel and most of the testimony of Flynn was in response to leading questions. Petitioner consistently maintains that the money he received from Flynn from 1965 through 1969 represented personal, non-interest-bearing loans. The only evidence contrary to petitioner's story, except for Flynn's testimony, is the statement he signed on December 23, 1969 set forth above in the findings of fact. Petitioner testified that Flynn prepared the statement and that Flynn gave petitioner $200 when he signed it and because he was unemployed, broke and Christmas was two days away, he signed the statement although it was not true. Flynn's version of the events agrees with the December 23, 1969 statement he prepared for petitioner to sign. Flynn testified that petitioner told him in 1965 that if Flynn would advance him the funds he could secretly acquire the controlling stock interest in a paper company. There was no evidence *141 of a written agreement to that effect between petitioner and Flynn. In 1969 he became nervous about the deal and secured the draft of April 1, 1969 for $50,000 from petitioner which was not paid by the bank on which it was drawn and then secured the check of June 13, 1969 for $70,000 from petitioner which was dishonored by the bank with which petitioner formerly had his checking account. Flynn prepared and secured the statement from petitioner on December 23, 1969 which Flynn testified was freely signed by petitioner. Flynn admitted upon being questioned by the Court that he claimed a deduction of $50,000 for the advances to petitioner on his income tax return for 1970 which has been allowed administratively by the Internal Revenue Service. Such a close question of fact, coupled with a sketchy record, a pro se taxpayer and a government witness whose testimony is led by counsel places a heavy burden on the trier of fact. Based upon the demeanor of petitioner and respondent's witness, the fact that both stand to gain from their respective versions of the events which transpired, and the plausibility of the objective facts, we conclude that the story of petitioner is more worthy *142 of belief. While we are uncomfortable accepting petitioner's story in light of his signed statement given to Flynn to the contrary we recognize that Flynn paid $200 at the time petitioner signed the statement two days before Christmas when petitioner had been unemployed for almost two years and had to support a wife and three children. Flynn's testimony was vague. He never identified his present employer or position other than to state that he was a corporate executive. He never identified the paper company of which petitioner was supposed to acquire the stock. He testified that he advanced money to petitioner from 1965 to 1969 before he began to get nervous about the deal because he was such a close friend of long standing yet he secured two worthless checks from petitioner at a time when he must have known petitioner had been unemployed for a year. Flynn testified that he had no record of the money advanced to petitioner but took petitioner's word for it as to how much had been advanced by April 1, 1969.Moreover, Flynn produced no written argument to corroborate his story as to the $50,000 in advances nor did he produce any evidence as to the amounts or times the advances *143 were made. Flynn was vague as to how much of the stock petitioner was to receive if control of the corporation were acquired.This hardly appears to be a likely business transaction for a "corporate executive" as he characterized himself. Flynn did not dispute petitioner's testimony that he gave $200 to petitioner when petitioner signed the December 23, 1969 statement. Flynn was earning approximately $58,000 per year and petitioner earned $3,427.18 in 1968 and nothing in 1969. The story which appears most plausible to us is not a business deal between Flynn and petitioner but instead a series of personal loans which petitioner became unable to pay and which Flynn wanted to deduct as business bad debts on his income tax return. We conclude, therefore, that the sums advanced by Flynn to petitioner in 1968 and 1969 were personal loans.
Respondent can hardly be heard to complain. He put his chips on Flynn's testimony rather than acting as a stakeholder by disallowing Flynn's deduction for the bad debt and forcing him into court. There is no evidence whatever that Flynn forgave any indebtedness owed him by petitioner; therefore there can be no income by reason of forgiveness of *144 indebtedness in 1968 or 1969. Decision will be entered for the petitioner.